Thomas A. Kearney (State Bar No. 90045)
tak@kearneylittlefield.com
Prescott W. Littlefield (State Bar No. 259049)
pwl@kearneylittlefield.com
**KEARNEY LITTLEFIELD LLP**
3436 N. Verdugo Rd., Ste. 230
Glendale, California 91208
Telephone  (213) 473-1900
Facsimile   (213) 473-1919

Gene J. Stonebarger (State Bar No. 209461)
gstonebarger@stonebargerlaw.com
Richard D. Lambert (State Bar No. 251148)
rlambert@stonebargerlaw.com
**STONEBARGER LAW**
A Professional Corporation
75 Iron Point Circle, Suite 145
Folsom, CA 95630
Telephone (916) 235-7140
Facsimile (916) 235-7141

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN VERBISCAR-BROWN, an individual, JULIA HANAGAN, an individual, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>HEALTH SYSTEMS DIRECT, INC., a Florida Profit Corporation<br><br>Defendant. | Case Number:<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227 *ET SEQ.*<br><br>DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. Plaintiffs Nathan Verbiscar-Brown and Julia Hanagan (together "Plaintiffs") bring this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of HEALTH SYSTEMS DIRECT, INC. ("Defendant"), in negligently and/or willfully contacting Plaintiffs through SMS or "text" messages on Plaintiffs' wireless telephones, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.* ("TCPA"), thereby invading Plaintiffs' privacy.

## JURISDICTION AND VENUE

2. The Court possesses federal question subject matter jurisdiction over TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

3. Venue is proper in this district under 28 U.S.C. § 1391 because Defendant continuously conducts business in this district and Plaintiffs received the text messages at issue in this matter within this district.

## PARTIES

4. Plaintiff Nathan Verbiscar-Brown is, and at all times mentioned herein was, a citizen and resident of the State of California.

5. Plaintiff Julia Hanagan is, and at all times mentioned herein was, a citizen and resident of the State of California.

6. Defendant Health Systems Direct, Inc. is a Florida Profit Corporation, and at all times mentioned herein was, a business that advertises to and provides various sales presentations to potential customers. Defendant offers "free" trips to destinations if the patrons are willing to attend various sales presentations.

7. According to Defendant's webpage, its business caters to young couples and often Defendant participates in various bridal expos.

8. Plaintiffs attended a bridal expo where they believe that Defendant may have been a vendor.

# FACTUAL ALLEGATIONS

9. Class actions under the TCPA are hardly novel. Indeed, there has been a large pushback by commercial enterprises across the United States to loosen the constraints that the TCPA has placed on business's ability to mass-text message thousands, if not millions of Americans' wireless telephones.

10. Still, the Federal Communications Commission has tightened its restraints on the utilization of mass-text messaging technology, requiring prior, express written consent before allowing companies, such as Defendant, to send text messages to the public utilizing automated dialing systems.

11. The internet is replete with advice to would-be advertisers warning them about the potential consequences of ignoring the TCPA, but some companies just won't learn.

12. Text messaging offers a competitive advantage over more traditional means of advertising, such as direct mail or calls. Text messaging allows virtually instantaneous communication with the recipient, almost anywhere in the world, day or night. Many cellular phones immediately alert the recipient of new text messages. Consumers frequently use text messaging to stay in close contact with business colleagues and associates, family members and friends. Text messaging is also used by schools, police departments, fire departments and emergency medical services across the country.

13. The instantaneous nature of text message communication makes it very appealing to telemarketers—and very annoying to consumers subjected to spam text messages.

14. This Action is about Defendant's use of text messaging to drive customers to Defendant's products.

# THE TEXTS

15. At some time Plaintiffs visited a bridal expo in which Defendant was probably a vendor. Plaintiffs registered for the expo and provided their contact information.

16. Plaintiffs did not provide their wireless telephone numbers directly to Defendant.

17. Plaintiffs did not provide their phone numbers to the expo organizer for the purposes of receiving solicitations.

18. At no time were Plaintiffs informed expressly in a writing that was signed by them that they would be receiving solicitations at their phone numbers.

19. Nonetheless, each Plaintiff received a text message solicitation from Defendant from the "short code" 313131.

20. Plaintiff Verbasicar-Brown received a text message on February 8, 2017 from short code 313131 that read:

> "Congratulations  Nathan you have been selected for a bridal gift package. Please call us today before 9 PM. 5612961230"

21. Plaintiff Hanagan received a text message on or about February 7, 2017 from short code 313131 that read:

> "Hello Julia THANKS for stopping by our booth at the Bridal show. Please Call us to claim your bridal gift package today before 9pm.  5612961230"

22. Despite the "personalized" nature of the text messages, they are generic in nature.

23. On February 9, 2017, counsel for Plaintiffs texted to short code 313131 two texts, first the word "test" and next the word "help". The two words were sent one minute apart. Immediately upon receiving the word "help", short code 313131 responded: "If you have a problem w/ EzTexting Info Alerts (max 60 msg/mth) call 800.753.5732. Msg&data rates may apply. To stop, txt STOP".

24. Counsel has no intention of being any sort of witness in this Action, and the foregoing allegation is being made for pleading purposes only, to plausibly show that this short code seems to be connected to a non-human computer program on the business side that automatically generates content and sends text messages without the help of human intervention.

25. According to the website for EzTexting, www.extexting.com, ExTexting provides: "MASS TEXTING. HASSLE FREE. CRAZY EAZY."

26. This case is about mass texting.

27. The text messages sent to Plaintiffs alleged above are messages that were sent using an ATDS.

28. Defendant never advised Plaintiffs in writing that it would use their wireless numbers to send them promotional text messages through an ATDS.

29. The above-referenced messages constitute "calls" under the TCPA that were not made for emergency purposes, as defined by 47 U.S.C. § 227 (b)(1)(A).

30. Defendant made these calls to promote its goods and services.

31. Defendant made these calls to Plaintiffs' wireless telephone number using an "automatic telephone dialing system" ("ATDS")—as defined by 47 U.S.C. § 227 (a)(1) and as prohibited by 47 U.S.C. § 227 (b)(1)(A)—which had the capacity to store or produce and dial numbers randomly or sequentially, and to place telephone calls and/or send text messages to Plaintiffs' wireless telephone numbers.

32. Plaintiffs' telephone numbers are, and at all relevant times were, assigned to a cellular telephone service, as set forth in 47 U.S.C. 227(b)(1)(A)(iii).

33. Plaintiffs are the authorized, intended and/or sole users of the cellular telephone numbers that Defendant called and/or to which it sent text messages.

34. Defendant intended to call and/or send text messages to—and in fact called and/or sent text messages to—Plaintiffs' wireless telephone numbers, and Plaintiffs received the calls and/or text messages.

35. Plaintiffs did not provide Defendant or its agents prior express consent to receive unsolicited text messages pursuant to 47 U.S.C. § 227 (b)(1)(A).

36. These calls and/or text messages invaded Plaintiffs' privacy. These telephone text messages by Defendant or its agents violated 47 U.S.C. § 227(b)(1).

37. Plaintiffs have a privacy interest in their wireless telephones. The telephone lines belong to Plaintiffs and they have an interest in not receiving illegal solicitations on their phones.

38. Congress has recognized that privacy rights are an important aspect of the protections afforded by 47 U.S.C. § 227, when it stated:

> (5) Unrestricted telemarketing, however, can be an intrusive invasion of privacy and, when an emergency or medical assistance telephone line is seized, a risk to public safety.
>
> (6) Many consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers.
>
> * * * *
>
> (9) Individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices.
>
> (10) Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

\* \* \* \*

> (12) Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.
>
> (13) While the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call, the Federal Communications Commission should have the flexibility to design different rules for those types of automated or prerecorded calls that it finds are not considered a nuisance or invasion of privacy, or for noncommercial calls, consistent with the free speech protections embodied in the First Amendment of the Constitution.
>
> (14) Businesses also have complained to the Congress and the Federal Communications Commission that automated or prerecorded telephone calls are a nuisance, are an invasion of privacy, and interfere with interstate commerce.

Pub. L. 102–243, § 2, 105 Stat. 2394 (1991) (found as a note to 47 U.S.C. § 227).

39. All consumers have a reasonable expectation of privacy that telemarketers will abide by the law and not invade their legally protected privacy rights.

40. Plaintiffs wasted time reading the text messages that were sent to them, which is what Defendant intended; indeed, according to ExTexting's website,

"More than 97% of text messages are opened and read within minutes of receipt. With this many eyeballs on your message, driving business has never been easier."

41. The unconsented to text messages reached and were stored on Plaintiffs' phones. As a result, the text messages used memory and data storage that belongs to Plaintiffs, not Defendant, and Defendant's use of Plaintiffs' phones' memory and data was not consented to by Plaintiffs.

42. Plaintiffs received the unconsented to text messages.

43. Defendant's conduct in sending the text messages to Plaintiffs and the class were a serious violation of their privacy as the act of sending unconsented to text messages is a direct violation of their right to be free from such messages under federal law as stated in the TCPA.

## CLASS ACTION ALLEGATIONS

44. Plaintiffs brings this action on behalf of themselves and on behalf of all others similarly situated ("the Class") as follows:

> All persons within the United States who received any SMS or text messages from Defendant or its agents on any wireless phone during the period of time beginning four years prior to the filing of the Complaint in this Action and continuing until the date the Class is certified.

45. Defendant and its employees or agents and the Court and its agents or employees are excluded from the Class.

46. Plaintiffs do not know the number of members of the Class, but believe the Class Members number in the thousands, if not more. Therefore, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

47. The joinder of the Class Members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties

and to the court. The Class can be identified through Defendant's records or Defendant's agents' records.

48. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class Members, including the following:

    a. Whether Defendant or its agents sent SMS or text messages without the recipients' prior express written consent;

    b. Whether Defendant or its agents used any automatic telephone dialing system to send SMS or text messages;

    c. Whether the numbers that were sent SMS or text messages were assigned to a wireless carrier;

    d. Whether SMS or text messages constitute calls for the purposes of the TCPA;

    e. Whether Plaintiff and the Class Members are entitled to statutory damages for SMS or text messages received; and

    f. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

49. Because Plaintiffs received at least one unsolicited telephone SMS or text message from Defendant without prior express consent, Plaintiffs are asserting claims that are typical of the Class. Plaintiffs will fairly and adequately represent and protect the interests of the Class in that Plaintiffs have no interests antagonistic to any member of the Class.

50. Plaintiffs and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and

Defendant will likely continue such illegal conduct. Because of the size of the individual Class Members' claims, few, if any, Class Members could afford to individually seek legal redress for the wrongs complained of herein.

51. Plaintiffs have retained counsel experienced in handling consumer class action claims.

52. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of Class Members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

53. Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

54. Plaintiffs will seek certification under Federal Rule 23(b)(2) for the injunctive relief and Rule 23(b)(3) for damages.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. §§ 227 *ET SEQ.*

55. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

56. Defendant, using an ATDS, sent text messages to Plaintiffs and the other Class Members at telephone numbers assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

57. By using an ATDS, Defendant was able to effectively send thousands of text messages simultaneously to lists of thousands of cellular phone numbers of consumers without human intervention. These text messages were made *en masse* without the prior express written consent of Plaintiff and the other members of the Class to receive such text messages.

58. The foregoing acts and omissions of Defendant and its agents constitute violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227 *et seq.*

59. As a result of Defendant's and Defendant's agents' violations of 47 U.S.C. §§ 227 *et seq.*, Plaintiffs and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

60. The foregoing acts and omissions of Defendant and its agents constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227 *et seq.*

61. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. §§ 227 *et seq.*, Plaintiffs and the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

62. Plaintiffs and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

**Wherefore**, Plaintiffs respectfully request the Court grant Plaintiffs and the other Class Members the following relief against Defendant:

1. As a result of Defendant's and Defendant's agents' violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class Member $500.00

in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

2. As a result of Defendant's and Defendant's agents' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class Member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

3. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiffs seek for themselves and each Class Member injunctive relief prohibiting such conduct in the future.

4. Plaintiffs seek for themselves and each Class Member an award of reasonable attorneys' fees and costs to Plaintiffs' counsel, including attorneys' fees, *inter alia*, pursuant to California Code Civil Procedure Section 1021.5.

5. Plaintiffs seek for themselves and each Class Member any other relief the Court may deem just and proper or any other remedy available for Defendant's violations alleged herein.

## DEMAND FOR JURY TRIAL

Plaintiffs demands a trial by jury on all claims so triable.

Dated:  June 8, 2017                     Respectfully submitted,


By: /s/ *Prescott W. Littlefield*
Prescott W. Littlefield
Kearney Littlefield
Attorneys for Plaintiff Paul Bihari

12
CLASS ACTION COMPLAINT